IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL L. K.,[1]

    **Plaintiff,**

    v.

    Civil Action 3:22-cv-185
    Judge Thomas M. Rose
    Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13) and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

    **I.**    **BACKGROUND**

Plaintiff protectively filed his DIB application on April 13, 2020, alleging that he has been disabled since March 21, 2019. After that application was denied at the initial and

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

reconsideration levels, a telephonic hearing was held on May 25, 2021, before an Administrative Law Judge ("the ALJ"), who issued an unfavorable determination on June 14, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review on May 17, 2022.

Plaintiff seeks judicial review of that final determination. He submits that remand is warranted because the ALJ erred when doing a subjective symptom assessment. (Pl.'s Statement of Errors 7, 8, ECF No. 11.) Plaintiff further contends that the ALJ erred when considering prior administrative findings from state agency reviewing physicians and opinion evidence from his doctor. (*Id*. at 8–10.) Defendant correctly maintains that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 5–10, ECF No. 11.)

## II.  THE ALJ'S DECISION

The ALJ issued his decision on June 14, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 14–36.) The ALJ initially noted that Plaintiff's date last insured for purposes of the Social Security Act was March 31, 2021. (R. 20.) At step

one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged date of onset, March 21, 2019, through his date last insured. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments: Chiari malformation, migraines, chronic obstructive pulmonary disease (COPD), and lumbar and thoracic degenerative disc disease. (*Id.*) At step three, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (R. 25.)

The ALJ then set forth Plaintiff's residual functional capacity[3] ("RFC") as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) subject to the following limitations: (1) frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

>crawling; (2) never climbing ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or moving mechanical parts; (4) no operating a motor vehicle; and (5) occasional exposure to moderate noise, vibration, extreme cold, extreme heat, humidity, wetness, dust, odors, fumes, and pulmonary irritants.

(R. 26.)

At step four, the ALJ relied on testimony from a vocational expert ("VE") to determine that Plaintiff was unable to perform his past relevant work as an iron worker. (R. 29–30.) At step five, the ALJ relied again on VE testimony to determine that in light of his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of assembler, inspector, and order clerk. (R. 30–31.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 21, 2019, through the date of the ALJ's decision. (R. 31.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the

4

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when performing a subjective symptom assessment and when considering prior administrative findings and opinion evidence. Each of these contentions of error are considered in turn; all are found to lack merit.

### A.     The ALJ's Subjective Symptom Assessment

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529; 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1).

5

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id*. In addition, there are seven factors set forth in SSR 16–3p[4] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996), which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit Court of Appeals has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

Here, the ALJ summarized Plaintiff's testimony about the intensity, persistence, and limiting effects of his physical symptoms as follows:

> The claimant testified that he is married and resides with his wife and minor children. He continues to be unable to work due to back pain and headaches lasting as long as 3½ days that cause impaired vision and black out episodes. He also has bilateral hand numbness that affects his ability to grip objects. Treatment has included pain medication and marijuana, the latter of which is of benefit. The claimant further testified that a typical day includes little activity beyond letting his dogs outside and taking his daughter to the bus. He relies on his wife for shopping and on his children for chores including caring for their farm animals.

(R. 19–20.) The ALJ then discussed why the record evidence did not fully support Plaintiff's disabling allegations. (R. 28–29.) He wrote as follows:

> After careful consideration of the entire record, I find that the claimant's medically determinable impairments could reasonably have been expected to cause the alleged symptoms; however, a "disabling" extent of functional limitation has not been established by convincing objective medical evidence during the period of time that the claimant had insured status (through March 31, 2021) nor thereafter. For example, the claimant walked for exercise (Exhibit B2F at 18) and had adequate physical capacity to remain fairly active on his small farm and for more strenuous activity like heavy lifting, cleaning, and moving boxes (Exhibit B2F at 7, 9, 14). Despite his extensive smoking history (Exhibit B2F at 7), COPD seems quite mild, and there is no evidence of spinal abnormalities or debilitating neurological symptoms which would compromise the claimant's ability to perform any and all physical activity, certainly given the available imaging evidence as well as examination findings of normal muscle tone and bulk which actually belies allegations of little to no daily activity. Regardless, pain medication is reportedly of some benefit (Exhibit B3F at 4,5), and it has been "strongly" recommended that the claimant pursue physical and aquatic therapy as those benefits "could be immense and risks are quite low" (Exhibit B3F at 4).

(R. 29.)

As this discussion demonstrates, the ALJ cited several reasons why the record did not fully support Plaintiff's allegations about the disabling nature of his symptoms. For instance, the ALJ explained that Plaintiff's daily activities after the alleged date of onset indicated that his

symptoms were not as limiting as alleged. (*Id*.) Substantial evidence supports that explanation. The ALJ noted that Plaintiff walked for exercise; the record reflects that Plaintiff reported on May 3, 2019, that he had been walking for exercise. (R. 311.) The ALJ also noted that Plaintiff retained the capacity to be fairly active on his small farm and to engage in more strenuous activity like heavy lifting, cleaning, and moving boxes. (R. 29.) The record reflects that on June 6, 2019, Plaintiff reported that he had been working at his mother's house and moving heavy boxes (R. 301); on June 19, 2019, he reported that he had been doing heavy lifting for a couple of days (R. 300). On September 11, 2020, Plaintiff reported to a consultative examiner that he spent his time, in part, raising animals on his small farm. (R. 632.)

Plaintiff, nevertheless, claims that the ALJ's reliance on his daily activities was error. (Pl.'s Reply 3–4, ECF No. 13.) Although there is a difference between routine personal care and full-time work, daily activities are a factor that an ALJ can consider. *See* 20 C.F.R. § 404.1529(c)(3)(i) (directing consideration of daily activities when assessing subjective symptoms including pain). Here too, the activities that the ALJ discussed—heavy lifting and animal husbandry—involved more than minimal daily functions. Moreover, the ALJ cited other reasons why Plaintiff's allegations about the intensity, persistence, and limiting effects of his physical symptoms were not fully supported by the record.

For instance, and as the discussion above demonstrates, the ALJ also explained that despite Plaintiff's disabling allegations, the record did not contain evidence of spinal abnormalities or debilitating neurological symptoms that would compromise Plaintiff's "ability to perform any and all physical activity" given available imaging. (R. 29.) Substantial evidence supports that explanation. X-Rays of Plaintiff's cervical spine in 2018, before the alleged date of onset, showed cervical spine straightening but no acute osseous abnormality, instability, or

8

significant neural foraminal narrowing. (R. 272.) Medical records from February 4, 2021, after the alleged date of onset, indicate that an MRI of Plaintiff's thoracic spine showed only minimal degenerative changes, no cord signal abnormalities, and low lying-cerebellar tonsils, which were compatible with Chairi I malformation—the least severe level assigned to that condition. (R. 670.) Neurological examinations after the alleged onset date likewise resulted in normal findings such as normal motor and sensory function, intact cranial nerves, and no apparent focal or neurosensory deficits. (R. 304, 308, 654, 625, 681.) Providers after the alleged onset date also routinely noted that Plaintiff was awake, alert, and oriented, in no apparent distress, or appeared non-toxic. (R. 304, 308, 314, 312, 299, 676, 624, 686, 692, 308, 653.)

      The ALJ further noted that despite his disabling allegations, Plaintiff had normal muscle tone and bulk, which belied his allegations of little to no activity. (R. 29.) The record supports that explanation—an examination before the alleged onset date found that Plaintiff had no atrophy or tone abnormalities and normal bulk and tone. (R. 276.) On September 8, 2020, after the alleged onset date, a consultative examiner found that Plaintiff had 5/5 scores on all strength tests. (R. 626–27.) Another examiner on January 1, 2021, determined that Plaintiff's strength was within normal limits in all four of his extremities. (R. 686.) Plaintiff's strength was also intact bilaterally on January 8, 2021. (R. 654.)

      The ALJ further explained that despite Plaintiff's disabling allegations, relatively conservative treatments had been recommended, including physical and aquatic therapy. (R. 29.) Substantial evidence supports that explanation. Before the alleged date of onset, it was recommended that Plaintiff attempt land and aquatic therapy. (R. 276, 264.) During that same time frame, Plaintiff was offered trigger point injections. (R. 269.) Plaintiff did not pursue such

9

treatments before or after his alleged onset date. It also appears that Plaintiff did not seek further treatment of any kind from his neurologist, Dr. Fahey, after his alleged onset date.

      The ALJ also explained that despite Plaintiff's disabling allegations, pain medications were reportedly beneficial. (R. 29.) Substantial evidence supports that explanation too. Medical records before the alleged date of onset indicate that Plaintiff reported no success with low doses of gabapentin. (R. 272.) After his gabapentin was increased, however, Plaintiff reported that his pain was improving; that despite some tiredness, it was "working fairly well;" his headaches improved as his gabapentin was increased; and that treatment with gabapentin was "helpful." (R. 269, 265, 262, 264.) On March 26, and June 6, 2019, after the alleged date of onset, Plaintiff reported that his headache symptoms were "less with neurontin." (R. 314, 307.)

      Plaintiff, however, cites other record evidence suggesting that medications were perhaps not so helpful. Plaintiff, for example, cites a record from October 2018, indicating that Plaintiff "had not responded to medication trials with NSAIDs as well as gabapentin as well as land-based physical therapy." (Pl.'s Statement of Errors 8, ECF No. 11 (citing R. 269).) But a fair reading of those same medical notes suggests that although Plaintiff reported that his pain problems had not completely resolved, he also reported that his pain was improving and was only a 4 on a 10-point scale even though he had not yet participated in physical therapy. (R. 268.) Likewise, Plaintiff cites another record from February 2019, indicating that at that time, Plaintiff's "headaches improved as gabapentin [was] increased" but that "[t]hey [were] still debilitating and unchanged in location, quantity, associated symptoms, and provocative phenomena." (Pl.'s Statement of Errors 8, ECF No. 11 (citing R. 262).) Those same notes further indicate, however, that gabapentin was helpful and would continue to be titrated, and that Plaintiff had refused other treatment options including physical therapy, aquatic therapy, trigger point injections, and

10

surgery. (R. 262, 264.) Moreover, it is the ALJ's task to weigh competing information. And if the record supports the conclusion reached by the ALJ, it will not be disturbed even if the record could also support a different conclusion. *Blakley*, 581 F.3d at 406. Such is the case here.

Plaintiff also argues that the ALJ failed to consider his Chiari malformation and possibly related headaches when performing a subjective symptom assessment. (Pl.'s Statement of Errors 8, ECF No. 11.) But that does not accurately reflect the ALJ's subjective symptom assessment. As previously explained, the ALJ explicitly noted that Plaintiff's pain medication was reportedly beneficial, and the ALJ cited treatment records from 2018 and 2019 indicating that Plaintiff's "only active treatment" for his Chiari malformation was gabapentin and that it had "been helpful" and was "working fairly well." (R. 29 (citing R. 336, 337).) Consequently, it is clear from the subjective symptom assessment that the ALJ was aware of and considered that condition.

Moreover, the ALJ discussed Plaintiff's Chiari malformation and possibly related headaches elsewhere in his determination. For instance, at step two, the ALJ wrote that Plaintiff had a non-compressive Chiari malformation and that he alleged "daily cervicogenic headaches" and "'severe' prolonged migraines." (R. 20.) During that discussion, the ALJ accurately noted that the record indicated that it was unclear if Plaintiff's headaches were due to his Chiari malformation or another disorder such as myofascial pain syndrome. (*Id.* (citing R. 336).) When discussing prior administrative findings from state agency reviewers, the ALJ also noted that "[Plaintiff's] most prevalent issues" were his "chronic back pain and headaches as well as COPD." (R. 27.) At that same step, the ALJ determined that Plaintiff had postural and safety limitations as a result of his "possible symptomatic Chiari malformation." (R. 28.) Thus, the determination, when read as a whole, demonstrates that the ALJ was aware of and considered

11

Plaintiff's Chiari malformation and headaches. *Avery v. Comm'r of Soc. Sec.*, No. 1:19–cv–1963, 2020 WL 2496917, at *13 (N.D. Ohio May 14, 2020) (quoting *Buckhanon ex rel. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) and upholding ALJ's subjective symptom assessment when determination was read in its entirety; although ALJ's discussion must permit review the court "read[s] the ALJ's decision as a whole and with common sense."))

Last, Plaintiff argues that the ALJ erred by failing to consider his lengthy tenure as an iron worker before his alleged date of onset. (Pl.'s Statement of Errors 10, ECF No. 11.) But work history is merely one of several factors that an ALJ can consider, but is not required to explicitly discuss. *See, e.g.*, *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (explaining that "[t]he ALJ was not required to explicitly discuss [the plaintiff's] work history when assessing his credibility . . . .").

For all these reasons, the undersigned does not find that the ALJ committed reversible error when performing a subjective symptom assessment. Plaintiff's contention of error lacks merit.

**B.     The ALJ's Consideration of Administrative Findings and Opinion Evidence**

Plaintiff additionally contends that the ALJ erred when considering prior administrative findings from state agency reviewers and medical opinions from his doctor, Carol Bland, M.D. This contention of error also lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3)

---

[5] Because Plaintiff's applications were filed in 2019, they are subject to regulations that govern applications filed after March 27, 2017.

other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2).

Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . .

13

but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

### 1. The State Agency Reviewers' Prior Administrative Findings

Plaintiff contends that the ALJ erred when considering prior administrative findings. Plaintiff's file was reviewed on September 16, 2020, by state agency reviewing physician, Dimitri Teague, M.D. (R. 93–97.) The ALJ summarized Dr. Teague's findings as follows:

> The claimant's physical capabilities were also assessed by the DDD reviewing physicians. Dimitri Teague, M.D., initially evaluated the claimant's physical condition on September 16, 2020 based on the evidence of record without actually examining the claimant (Exhibit B4A). The "severe" physical impairments determined to exist by Dr. Teague were a back disorder, cerebral degeneration, migraines, and carpal tunnel syndrome. Dr. Teague concluded that the claimant retains the functional capacity to lift as much as 20 pounds occasionally and 10 pounds frequently. The claimant can sit as long as 6 hours and stand/walk for 6 hours each during any given 8-hour workday. He can push/pull without limitation (within the specified lifting confines). The claimant can climb ramps and stairs, balance, stoop, kneel, crouch and crawl frequently. He cannot climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to vibration and should avoid all exposure to workplace hazards of unprotected heights and dangerous machinery (Exhibit B4A at 6-7).

(R. 27.) Plaintiff's file was reviewed again on December 17, 2020, by state agency reviewing physician, Mehr Siddiqui, M.D. (R. 103–106.) The ALJ summarized Dr. Siddiqui's findings as follows:

> The record was then reviewed by DDD physician, Mehr Siddiqui, M.D. on December 17, 2020 (Exhibit B6A). The "severe" physical impairments determined to exist by Dr. Siddiqui were a back disorder, cerebral degeneration, migraines, and carpal tunnel syndrome. Dr. Siddiqui concluded that the claimant retains the functional capacity to lift as much as 20 pounds occasionally and 10 pounds frequently. The claimant can sit as long as 6 hours and stand/walk for 6 hours each during any given 8-hour workday. He can push/pull without limitation (within the specified lifting confines). The claimant can climb ramps and stairs, balance, stoop, kneel, crouch and crawl frequently. He cannot climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to vibration and should avoid all exposure to workplace hazards of unprotected heights and dangerous machinery (Exhibit B6A at 7-8).

(R. 27.)

The ALJ then considered those prior administrative findings and explained that they were only partially persuasive. He wrote as follows:

> The assessments provided by the DDD reviewing physicians describe an underlying capacity for light exertion. By definition, light work involves lifting as much as 20 pounds occasionally and 10 pounds frequently. Light work can require standing and walking as much as 6 hours during any given 8-hour workday. It may involve occasional stooping. Light work may require upper extremity use for grasping, holding, and turning objects (20 CFR 404.1567(b). However, in giving some deference to the claimant's most prevalent issues of chronic back pain and headaches as well as COPD (a condition that Drs. Teague and Siddiqui seem to have not considered), it is found that light work is an overestimation of his physical capacity and that it is appropriate to further limit the claimant to sedentary level work. Sedentary work does not require standing or walking more than 2 hours during any given 8-hour workday. It does not involve any type of strenuous physical activity (20 CFR 404.1567 (a)). Given that the balance of the record reveals mild spinal abnormalities, intact neurological findings, unremarkable physical examinations, and a conservative level of treatment, no compelling evidence has been presented to show that during the relevant period the claimant was incapable of performing sedentary work as defined.
>
> Both DDD reviewing physicians imposed a mixture of postural and safety limitations, and these findings are somewhat persuasive as the general idea behind their imposing such limitations is to account for "possible symptomatic Chiari malformation" manifested by headaches, paresthesia, and reported blackouts (Exhibit B3F at 7). Accordingly, it is found that the claimant could climb ramps and stairs, balance, stoop, kneel, crouch and crawl frequently, but could never climb ladders, ropes, or scaffolds. To avoid aggravating his chronic pain or triggering respiratory symptoms, the claimant's job duties should have required only occasional exposure to environmental factors such as moderate noise, vibration, extreme cold, extreme heat, humidity, wetness, dust, odors, fumes, and pulmonary irritants. For safety considerations, the claimant should not have performed work around hazards such as unprotected heights or moving mechanical parts. He also required an occupation that did not involve operating a motor vehicle.

(R. 27–28.)

As this discussion demonstrates, the ALJ noted that the state agency reviewers found that Plaintiff had several postural and safety limitations, but given Plaintiff's chronic pain, respiratory issues, and other safety considerations, the ALJ determined that it was necessary to incorporate

15

into Plaintiff's RFC *additional* environmental and hazard limitations. (*Id*.) The ALJ further noted that although the state agency reviewers found that Plaintiff was capable of light work, given Plaintiff's complaints about chronic back pain, headaches, and COPD, the ALJ determined that Plaintiff was instead *more limited*, and capable of only a range of sedentary work. (*Id*.) The ALJ additionally explained that an RFC for a range of sedentary work was sufficient given that the balance of the record reflected only mild spinal abnormalities, intact neurological findings, unremarkable physical examinations, and a conservative level of treatment. (*Id*.)

Plaintiff does not challenge these reasons cited by the ALJ. Instead, Plaintiff argues that the ALJ failed to properly discuss the supportability factor. The undersigned disagrees. Although the ALJ did not expressly use the word "supportability," the ALJ determined that the state agency reviewers' findings were not persuasive because they apparently failed to consider one of Plaintiff's conditions—COPD. (R. 27.) Supportability refers to the degree to which a source cites relevant objective evidence and offers relevant explanations. § 404.1520c(c)(1). The ALJ's decision to discredit the reviewers' findings for failing to consider a relevant condition demonstrates that he considered the supportability factor even if he failed to invoke it by name. Similarly, the ALJ found the reviewers' findings partially persuasive to the extent they found that Plaintiff had postural and safety limitations as a result of his "possible symptomatic Chiari malformation." (R. 28 (citing R. 339).) Again, by noting that these findings accounted for relevant conditions and symptoms, the ALJ demonstrated that he considered the supportability factor.

In any event, and as Defendant notes, the ALJ ultimately assessed a RFC that was *more* restrictive than the state agency reviewers' findings. Specifically, the ALJ determined that Plaintiff was capable of a range of sedentary work instead of light work, incorporated into

16

Plaintiff's RFC the postural and safety limitations found by the reviewers, and incorporated additional environmental and hazards restrictions. (R. 28.) Therefore, to the extent the ALJ's supportability discussion was wanting, that error was harmless. Plaintiff's contention of error lacks merit.

### 2. Dr. Bland's Medical Opinions

Plaintiff also contends that the ALJ erred when considering medical opinion evidence from his doctor, Dr. Bland, who filled out a medical statement and a medical assessment in May 2019. (R. 694–95, 696–700.) The ALJ summarized Dr. Bland's opinions in those two documents as follows:

> The claimant's physician, Carol Bland, M.D. submitted assessments of his physical functioning capabilities in May 2019 (Exhibits B17F / B18F). Dr. Bland diagnosed the claimant with a Chiari malformation, lumbar and thoracic back pain, anxiety and depression, carpal tunnel syndrome, headaches, syncopal episodes, tinnitus, and visual disturbances. She limited the claimant to a very reduced range of sedentary work due to his inability to stand/walk for prolonged periods and do repetitive movements with his hands and stated that he could be expected to be absent more than 3 times per month. Dr. Bland also indicated that the claimant's anxiety and depressive symptoms interfere with concentration and memory while headaches cause difficulty with thoughts, decisionmaking and performance of daily living activities.

(R. 26.) The ALJ then explained that Dr. Bland's opinion was not persuasive. The ALJ wrote as follows:

> However, a fair review of the claimant's treatment records do not support Dr. Bland's opinion evidence. Facet loading is positive bilaterally, and the claimant has exhibited reduced range of motion and pain to palpation of the lumbar and cervical spine (Exhibit B3F at 16). Otherwise, throughout the record, physical examination findings have been normal. Recall that gait and station and range of motion of the extremities are normal. Muscle tone and bulk are normal. The claimant has 5/5 muscle strength of the bilateral upper and lower extremities. Grip strength is strong bilaterally. Straight leg raise is negative. Neurologically, he also remains intact with normal speech, and sensory and motor function and no apparent focal deficits (Exhibits B2F / B3F / B16F). Imaging evidence and scans of the claimant's spine shows no more than mild/minimal level changes. Measures in pain control have remained conservative with medication, and the claimant receives no mental health

> treatment. Aside from relying on his family for transportation, the claimant reported no problems performing daily living activities on his "small farm" when he was interviewed by Dr. O'Connell subsequent to Dr. Bland's assessments. Given these inconsistencies, it seems that Dr. Bland simply based her limitations upon an uncritical acceptance of the claimant's subjective complaints, i.e. headaches lasting from one hour to several days and coordination and movement deficits, and increased symptoms when under stress. As such, her opinion evidence is not persuasive.

(R. 27.)

As this discussion demonstrates, the ALJ found that the medical records did not support Dr. Bland's opinion. The ALJ noted generally normal physical examination findings. The record substantially supports that observation. On September 8, 2020, an examination found that Plaintiff scored 5/5 on all strength tests (R. 626–27); strong grip strength (R. 625); and negative straight leg raising tests (R. 625). Plaintiff also walked with a normal gait without ambulatory aids. (R. 627.) On January 1, 2021, an examiner determined that Plaintiff's strength was within normal limits in all four of his extremities. (R. 686.) Plaintiff's strength was also intact bilaterally on January 8, 2021. (R. 654.) Neurological examinations after the alleged onset date likewise resulted in normal findings such as normal motor and sensory function, intact cranial nerves, and no apparent focal or neurosensory deficits. (R. 304, 308, 654, 625, 681.) The ALJ also accurately explained that imaging evidence and spine scans showed no more than mild or moderate changes—MRI's of Plaintiff's thoracic spine showed only minimal degenerative changes, no cord signal abnormalities, and low lying-cerebellar tonsils, compatible with the least severe type of Chairi I malformation. (R. 670.) The ALJ also accurately explained that Plaintiff's treatment remained conservative. Plaintiff was prescribed medications for his headaches (R. 314, 307), but it does not appear that he pursued other treatments including surgery. Indeed, the record does not reflect that Plaintiff continued to seek treatment of any kind from his neurologist after the alleged date of onset.

As the ALJ's discussion also demonstrates, the ALJ found that Plaintiff's reported daily activities were inconsistent with Dr. Bland's opinion. Substantial evidence supports that determination too. As the ALJ accurately noted, on September 11, 2020, Plaintiff reported that he spent his time, in part, raising animals on his small farm and that he had no difficulty completing daily tasks. (R. 632.)

Plaintiff argues, however, that the ALJ's assessment of Dr. Bland's opinion demonstrates that he misunderstood the nature of his primary symptom. (Pl.'s Statement of Errors 8, ECF No. 11.) Specifically, Plaintiff alleges that his primary symptom was headaches, and thus, the ALJ's reference to normal physical examination findings was misplaced. (*Id*.) The undersigned is not persuaded. The ALJ explained elsewhere in the determination that Plaintiff's "most prevalent issues" were "chronic back pain and headaches" (R. 27), thereby demonstrating his awareness of Plaintiff's headaches. The ALJ also did not rely exclusively on normal physical examination findings when assessing Dr. Bland's opinion—the ALJ noted normal physical examination findings, relatively benign imaging evidence, conservative treatment, and Plaintiff's daily activities. And as already explained, these considerations enjoy substantial record support.

For all these reasons, the undersigned does not find that the ALJ committed reversible error when assessing Dr. Bland's opinion. Plaintiff's contention of error lacks merit.

## V. RECOMMENDED DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's subjective symptom assessment and that any errors identified by Plaintiff are harmless. Therefore, and for all the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE